**William M. SIMS, Appellee,**

v.

**VIRGINIA ELECTRIC AND POWER COMPANY, Appellant.**

**No. 75–1950.**

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1976.

Decided Jan. 7, 1977.

Lewis T. Booker, Richmond, Va. (George D. Gibson, Virginia W. Powell, Hunton, Williams, Gay & Gibson, Richmond, Va., on brief), for appellant.

William C. Raper, Winston-Salem, N. C. (Allan R. Gitter, Jimmy H. Barnhill, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Plaintiff, William M. Sims, sued in a North Carolina state court to recover medical expenses which he has incurred, and expects to incur, as the result of the injury of his daughter, Jennifer Sims, alleged to have been due to the negligence of defendant. The case was removed to the United States District Court for the Middle District of North Carolina, and then transferred to the United States District Court for the Eastern District of Virginia. Trial by jury resulted in a verdict for plaintiff in the amount of $35,000 upon which judgment was entered. We reverse and direct entry of judgment for the defendant.

William M. Sims, plaintiff, and his then wife, Marilyn M. Sims, were divorced December 31, 1969 by an appropriate court of the State of Alabama. At that time, the Sims had two daughters. The younger, Jennifer Sims, was between seven and eight years of age. The divorce decree, which incorporated a voluntary settlement between the parties, gave custody of the children to the wife, Marilyn, but with visitation privileges to the father. Alimony was waived by Marilyn, but the decree required Sims to pay $200 per month, for several months, later to be increased to $250 per month, for the support of the two children. The decree also required Sims to maintain full medical and hospital insurance coverage on the two infant girls and a life insurance policy with coverage of $35,000 with

said daughters as beneficiaries.[1] Sims has complied with his obligations under the divorce decree.

Some time subsequent to the divorce decree, Marilyn married Robert L. Brannon, Jr.

On May 24, 1972, the ten year old Jennifer Sims was climbing a tree in her yard in Fairfax County, Virginia, when she allegedly came in contact with an electric wire under the control of Virginia Electric and Power Company (VEPCO). She fell to the ground and sustained serious injuries.

In 1973, a motion for judgment was filed by Jennifer Sims, by Marilyn Brannon as her natural mother and next friend, against VEPCO, in the Circuit Court of Fairfax County, Virginia. Márilyn waived her right to recover for the expenses involved in the cure of her daughter in favor of Jennifer in that case. William Sims was notified of the suit, but was not a party to it. On March 1, 1974, the Circuit Court of Fairfax County entered an order approving a settlement of

the suit for $475,000.00, which amount, the order recited, had been paid into open court by VEPCO. The order contained a notation to the effect "the natural father was not within the jurisdiction of the Court."

The order of March 1, 1974, approving the settlement, included a provision that $25,000 was to go to two escrow agents as partial security for an undertaking by Robert L. and Marilyn Brannon to indemnify VEPCO from any other claims arising out of the accident here involved.[2]

VEPCO's contentions are that recovery by Sims in this action is barred by the compromise settlement in the Fairfax County action and the release entered into between VEPCO and Mr. and Mrs. Brannon, and that Sims cannot recover expenses of curing Jennifer Sims since he has had and will have no liability for them.

We reverse the judgment of the district court because Sims had paid nothing for Jennifer's cure and there was no evidence he would be expected to pay anything, not

1. The pertinent provisions of the decree and settlement agreement in the divorce case are as follows:

　　*　　*　　*　　*　　*　　*

"It is further ORDERED, ADJUDGED AND DECREED that the agreement for settlement reached by the parties, dated December 30, 1969, is attached hereto, marked Exhibit A, and made a part of this decree, affirmed by the Court, be and is binding on all parties, until further orders of this Court, the right to modify provisions concerning child support, custody and control being expressly reserved by this Court for further modification which may be justified by future changes in conditions.

　　*　　*　　*　　*　　*　　*

"1. The wife shall have the custody and control of the infant children, Camille Sims and Jennifer Sims, but the husband shall have the right to visit, see and be with said children at reasonable times and places, and by making verbal advanced arrangements with the wife, may have their temporary custody on occasions convenient with the parties.

　　*　　*　　*　　*　　*　　*

"5. The wife waives alimony and support for herself, but the husband agrees to pay support for the two said infant children in the amount of Two Hundred Dollars monthly, payable by certified check or postal money order, no later than the 5th day of each

month, in advance, to the Register of the Law and Equity Court of Chilton County, Alabama, or his successor in office, which money shall be forwarded by the Court to the wife for the support and maintenance of said infant children; with further stipulation that beginning August 5, 1970, said payments shall be increased to Two Hundred Fifty Dollars monthly until further orders of the Court.

"6. In addition to said payments, the husband agrees to keep and maintain full medical and hospital insurance coverage on said infants, and a life insurance policy with said children named as beneficiaries thereon, in the amount of Thirty Five Thousand Dollars, and upon request of the Court of the wife, he shall produce evidence and satisfactory proof that said insurance coverage is in full force and effect, and copies of such policy shall be furnished to the wife."

　　*　　*　　*　　*　　*　　*

2. A copy of a letter from Jennifer Sims' then attorney, Charles H. Mayer, to her natural father, William Sims, appears several times in the record. The letter urges William Sims to execute a release of all claims he might have regarding the case of *Jennifer Sims v. VEPCO*. It was obviously because of William Sims' unwillingness to execute this release that the indemnification and escrow agreements were entered into.

because the payments were by way of insurance, or other than from Sims pocket, which is merely incidental.

It is clear that Sims personally paid nothing in connection with medical expenses resulting from Jennifer's accident. All were covered by insurance. There is not any evidence that any future expenses of cure for Jennifer would be likely to be paid by Sims above the routine payments provided for in the divorce decree. The allegations in Sims' complaint that he "has incurred" large medical expenses can be sustained only upon the assumption that Sims can claim credit for having incurred expenses actually paid by the medical and hospital insurance carrier.

■ Plaintiff relies upon the collateral source doctrine to support his contention that he is entitled to recover in this action against VEPCO monies expended by the insurance company in connection with Jennifer's injuries. He argues that to deny his recovery is to apply the doctrine in violation of *Walthew* and *Burks*, infra. We hold that the collateral source doctrine is not applicable to the facts of this case, and that to deny Sims recovery does not amount to its application contrary to the law of Virginia. To support this contention, plaintiff relies upon *Walthew v. Davis*, admr., 201 Va. 557, 111 S.E.2d 784 (1960), and *Burks v. Webb*, admr., 199 Va. 296, 99 S.E.2d 629 (1957). These are clear cases for the true collateral source doctrine. In both cases, the administrator of a decedent prosecuted an action for wrongful death. It was held in each case that the alleged tortfeasor could not show in evidence that a statutory beneficiary of the deceased person was entitled to recover life insurance on account of the death complained of in order to diminish the damages payable by the wrongdoer.

The facts of our case are different. Sims has suffered no injury. He has not been physically hurt and has not been required to pay any money because of the injury to Jennifer. He paid the insurance premiums because of the divorce decree, not as cure for his daughter, and the amount thereof has not been increased because of her injury. A true situation for application of the collateral source doctrine might exist if VEPCO had tried to defend Marilyn's and Jennifer's action upon the ground that the medical and hospital expenses had been paid by an insurance carrier, but that is not the case before us. In our case, VEPCO has paid once for the expenses of cure in Marilyn's and Jennifer's suit, so depriving a like recovery to Sims does not result in the wrongdoer's diminishing its damages.

The situation presented in *Trueman v. United States*, 180 F.Supp. 172 (E.D.La., 1960), applying Virginia law, is analogous to the case at hand. Suit was under the Tort Claims Act for medical malpractice alleged to have occurred at an Army hospital at Fort Eustis, Virginia. Suit by the parents was joined with a suit on behalf of the child. The father was an Army Sergeant. The court, sitting without a jury, found in favor of the infant plaintiff. As to the action by the parents, it stated (p. 176):

"In Virginia, absent proof of loss of services or expense incurred, the parents, as such, have no claim in damages for injury to their child. Their claims, therefore, must be dismissed."

Plaintiff seeks to distinguish *Trueman* upon the ground that the court in that case relied upon *Awtrey v. Norfolk and Western Ry. Co.*, 121 Va. 284, 93 S.E. 570 (1917). In *Awtrey*, the plaintiff's only claim for damages was that the railroad company had failed to bury her son who was found dead on its tracks. The court held that there could be "no recovery for mental anguish which is unaccompanied by actionable physical or pecuniary damage." Thus, plaintiff argues that *Trueman* is limited strictly to cases of mental anguish. Such an interpretation of *Trueman* we think unwarranted. The general principle which underlies both *Trueman* and *Awtrey* is that a party can only recover for actionable pecuniary damage. In *Awtrey*, that principle was applied to a party's claim based wholly upon mental suffering. In *Trueman*, it was applied so as to deny recovery to a parent for medical expenses, when all medical and hospital

services had obviously been paid or furnished without charge, by the government, the tortfeasor.

Plaintiff cites *Elliott v. United States*, 329 F.Supp. 621 (D.Maine, 1971), for the proposition that under Virginia law the father is the parent entitled to recover for medical expenses occasioned by a defendant's tortious injury to an infant child. Defendant properly points out that in *Elliott* there was no contest as between the two parents as there is here. So the question here was not before that court.[3]

█ We thus hold that, so far as Sims bases his claim to recover from VEPCO upon monies expended for the expenses of cure for Jennifer, he cannot recover because he has made no such expenditures. Sims has paid no more for Jennifer's cure than he was already obligated to pay, prior to the accident, under the divorce decree. The payments he made were in the nature of previously ascertained support payments under the decree, not expenses for curing his child. He is not entitled to recover as expenses for cure routine medical and hospital insurance payments provided for under a decree of divorce where the custody of the child has been given to the mother and where the payments have in no way been increased by the accident.

By the same token, Sims is not entitled to recover for future expenses of cure. He has not paid out anything thus far. All of the payments for which he sues were made by the insurance provided for under the terms of the divorce decree. There is not a scrap of evidence in the record that any future payments for cure will exceed the payments for insurance previously provided for under the decree. Since there is no

proof that Sims is likely to have any future liability for the expenses of cure of his daughter other than that already provided in the decree prior to the accident, he may not recover for such in this action. See *Wine v. Beach*, 194 Va. 601, 606, 74 S.E.2d 149 (1953), that unlikely damages are not recoverable.

We do not have before us a case in which a divorced parent in Sims' situation has been assessed or charged with, or is likely to be liable for, or has paid, expenses of cure for a child in the sole custody of the other parent, and we express no opinion on that question.

█ Sims argues that in Virginia the father is primarily responsible for the expenses of cure for an injured child. See *Watson v. Daniel*, 165 Va. 564, 183 S.E. 183 (1936).[4] Assuming for argument the validity of this proposition as between the parents, or, indeed, for example, as in a suit by a hospital against the parents, it has no application here to give Sims a cause of action in his own right[5] disconnected from the payment of any expenses of cure and disconnected from any obligation to pay for the cure above the routine payment of hospital and medical insurance in a divorce decree.

█ In Virginia, for years, a married woman has had the right to sue and be sued in her own name. See Va.Code § 55–36. The mother, as well as the father, has the duty to support their child. See *Department of Mental Hygiene v. Shepard*, 212 Va. 843, 188 S.E.2d 99 (1972).[6] A divorced mother with sole custody of a minor child also has the right to compromise the child's claim for damages tortiously inflicted. Va. Code § 8–170.

---

3. *Elliott* based its holding that past medical expenses, having been paid by the United States, were not recoverable, on the case of *United States v. Brooks*, 176 F.2d 482 (4th Cir. 1949), which in turn was based on the rule that the government should not have to pay a loss twice, not upon the rule of *Trueman* that, absent an expense incurred, there was no obligation to pay.

4. In no case called to our attention has there been any question raised between the mother and father, as here.

5. Separate from, and which would extinguish the claim of, the mother, under the facts here.

6. In *Shepard* the father was dead.

The parents' cause of action in Virginia for injuries to a minor child are based on loss of services and the responsibility of paying for the cure of the child. *Moses v. Akers*, 203 Va. 130, 132, 122 S.E.2d 864 (1961). By the divorce decree, Sims' right to Jennifer's services ended subject only to some modification of the decree, which has not occurred. Under Virginia law, Marilyn had an equal responsibility with Sims for the payment of cure for the injuries to their daughter Jennifer. Marilyn had a right as a parent who was entitled to the services of Jennifer and responsible for the expenses of her cure to bring a suit for such expenses, which she did. This right of action was waived in favor of her infant daughter, about which no question is raised. Marilyn has collected from VEPCO for the expenses of cure, this being necessarily included in the settlement of the whole case. There is no question but that Marilyn had a right to do under Virginia law that which she did.

The question remains, however, as to whether Sims is also entitled to sue since he did not sign a release and was not a party to the suit in Fairfax County. We hold that he is entitled to no recovery in this case. He has no right to the services of the child, and he has neither paid, nor is likely to be called upon to pay, any expenses of cure. Under these circumstances, we hold that Sims may not recover, not because he may not have any right to sue, which we do not decide, but because he has suffered no damage, which we do decide.

VEPCO additionally and plausibly argues that since the divorced wife, Marilyn, had a right to bring a case in her own name, as well as that of her daughter; had waived her claim in favor of the daughter; and had a right to compromise the whole suit; that upon the satisfaction of the claims in such a suit, VEPCO should be discharged from all liability, it being derivative as to the parents, whether or not the father participated. Because Sims may not recover in any event, it is unnecessary for us to decide the point, and we express no opinion on that question also.

The judgment of the district court must be vacated and remanded with directions to enter judgment for the defendant.

*VACATED AND REMANDED.*