PRESENT: All the Justices

DEMEATRIC EUGENE BLOW

v. Record No. 250365

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE JUNIUS P. FULTON, III
APRIL 16, 2026

## FROM THE COURT OF APPEALS OF VIRGINIA

After an undercover law-enforcement officer "performed a controlled drug transaction" with Demeatric Blow at a clothing store, officers obtained an arrest warrant for Blow and a search warrant for the store. Upon executing the warrant, officers discovered more marijuana and firearms inside the store. On appeal, Blow contended that the evidence obtained from the search should have been suppressed because the officers violated Code § 19.2-56(B) by not giving him a copy of the search warrant and its supporting affidavit. The Court of Appeals disagreed. Finding no error, we affirm the judgment of the Court of Appeals.

## I. BACKGROUND

Upon submission of an affidavit alleging that Blow was distributing marijuana inside a clothing store located in a strip mall, officers of the Norfolk Police Department obtained an arrest warrant for Blow and a search warrant for the store. Upon executing the search warrant, officers directed everyone in the store to exit through the back door; Blow, the only occupant, emerged from the store and was quickly handcuffed. Officer Matt Dow read the contents of the search warrant and affidavit to Blow but did not give Blow a copy of either document, later testifying that "[t]his wasn't a place of residence" and that Blow "was not the owner of that location." After declaring the store safe to enter, officers discovered large quantities of marijuana and two firearms. Blow was subsequently indicted on additional marijuana and firearm-related offenses.

Blow sought to suppress all evidence obtained from the search pursuant to Code § 19.2-56(B), which prohibits the use of a no-knock warrant for a "place of abode" and requires

officers to *give* a copy of the search warrant and affidavit to the owner, or other adult occupant, of the place to be searched. Blow contended that the provision requiring officers to give an individual a copy of the search warrant and affidavit governs all search warrants generally—not just those for a "place of abode"—and because Blow had not been *given* copies, the evidence should be suppressed. The circuit court denied Blow's request. While the circuit court agreed that the provision applies to all search warrants generally and not just those for a "place of abode," it concluded that since Blow was subject to immediate arrest, he was no longer an occupant after exiting the store at the command of the officers. Therefore, Blow was not entitled to a copy of the search warrant and affidavit under Code § 19.2-56(B). Desiring to preserve his right to appeal this ruling, Blow entered a conditional guilty plea in accordance with Rule 3A:8(c) and was sentenced to a period of incarceration.

On appeal, the Court of Appeals affirmed the circuit court's decision under the "right result for the wrong reason" doctrine. *Blow v. Commonwealth*, Record No. 0332-24-1, 2025 Va. App. LEXIS 195, at *9 (April 1, 2025) (unpublished). The Court of Appeals found that the General Assembly's use of certain definite and indefinite articles in the language of Code § 19.2-56(B) was instructive for assessing whether the references to search warrants were general or specific to those for a "place of abode." *Id.* at *8-9. Ultimately, the Court of Appeals concluded that in light of the requirement that the various parts of a statute be read together in their entirety, the provision requiring that a copy of the search warrant and affidavit be given to the occupant upon execution only applies to search warrants for a "place of abode." *Id.* Therefore, while the circuit court was incorrect in concluding that Code § 19.2-56(B) applies to all search warrants generally, it nevertheless correctly denied Blow's request to suppress all evidence because he was in a commercial establishment, not a "place of abode." *Id.* Blow now appeals from this decision.

## II. ANALYSIS

"Matters of statutory interpretation present pure questions of law, which are reviewed de novo on appeal." *Commonwealth v. Delaune*, 302 Va. 644, 655 (2023). The question presented here is straightforward: Does Code § 19.2-56(B), in its entirety, apply only to search warrants for a "place of abode," or do certain provisions apply to all search warrants generally? In answering this question, we begin by looking at the statute in full:

> No law-enforcement officer shall seek, execute, or participate in the execution of a no-knock search warrant. *A search warrant for any place of abode* authorized under this section shall require that a law-enforcement officer be recognizable and identifiable as a uniformed law-enforcement officer and provide audible notice of his authority and purpose reasonably designed to be heard by the occupants of such place to be searched prior to the execution of such search warrant.

> After entering and securing the place to be searched and prior to undertaking any search or seizure pursuant to *the search warrant*, the executing law-enforcement officer shall give a copy of *the search warrant* and affidavit to the person to be searched or the owner of the place to be searched or, if the owner is not present, to at least one adult occupant of the place to be searched. If the place to be searched is unoccupied by an adult, the executing law-enforcement officer shall leave a copy of *the search warrant* and affidavit in a conspicuous place within or affixed to the place to be searched.

> *Search warrants authorized under this section for the search of any place of abode* shall be executed by initial entry of the abode only in the daytime hours between 8:00 a.m. and 5:00 p.m. unless (i) a judge or a magistrate, if a judge is not available, authorizes the execution of such search warrant at another time for good cause shown by particularized facts in an affidavit or (ii) prior to the issuance of the search warrant, law-enforcement officers lawfully entered and secured the place to be searched and remained at such place continuously.

> A law-enforcement officer shall make reasonable efforts to locate a judge before seeking authorization to execute *the warrant* at another time, unless circumstances require the issuance of *the warrant* after 5:00 p.m., pursuant to the provisions of this subsection, in which case the law-enforcement officer may seek such authorization from a magistrate without first making reasonable efforts to

3

locate a judge. Such reasonable efforts shall be documented in an affidavit and submitted to a magistrate when seeking such authorization.

Any evidence obtained from a search warrant executed in violation of this subsection shall not be admitted into evidence for the Commonwealth in any prosecution.

Code § 19.2-56(B) (emphases added).

In full, Code § 19.2-56(B) governs the execution of certain search warrants and imposes specific limitations on said execution. The first paragraph prohibits the use of a no-knock search warrant for any "place of abode" and also requires law-enforcement officers to be identifiable when executing a search warrant for a "place of abode." The second paragraph requires law-enforcement officers executing "the search warrant" to provide the owner, or other adult occupant, of the searched place with a copy of "the search warrant" and supporting affidavit, but does not make any direct reference to a search warrant for a "place of abode." The third paragraph provides that when law-enforcement officers execute a search warrant for a "place of abode," they must do so between 8:00 a.m. and 5:00 p.m., unless otherwise authorized. The fourth paragraph requires law-enforcement officers to make reasonable efforts to obtain judicial authorization if they wish to execute "the warrant" at another time, but again, there is no direct reference to a "place of abode." Finally, the fifth paragraph provides that if law-enforcement officers violate these provisions, the Commonwealth may not admit the results of the search into evidence in any prosecution.

When interpreting a statute, we "are bound by 'the plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result,'" *City of Charlottesville v. Payne*, 299 Va. 515, 527 (2021) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 (2006)), and we "presume that the legislature chose, with care, the specific words of the statute." *West Virginia v. State Corp. Comm'n*, 304 Va. 148, 158 (2025) (quoting *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021)). Furthermore, it is our duty to "interpret the

4

several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." *Va. Elec. & Power Co.*, 300 Va. at 161 (quoting *Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 387-88 (1983)).

As the Court of Appeals correctly noted, only the first and third paragraphs of Code § 19.2-56(B) specifically reference a search warrant for a "place of abode," while the second and fourth paragraphs refer to either "the search warrant" or "the warrant." The definite article "the" is meant to particularize the noun it follows by relating it to something *specific*, whereas indefinite articles like "a" refer to something more generally. *See Virginia Polytechnic Inst. & State Univ. v. Prosper Fin. Inc.*, 284 Va. 474, 481 (2012) ("The use of the definite article 'the' coupled with the singular form of the noun 'address' reflects a legislative intent to serve process at a single address."). Thus, reading the statute as a whole, the deliberate use of the definite article "the" in the second paragraph indicates that the General Assembly intended for "the search warrant" to refer back to the specific search warrant described in the first paragraph. Because "the search warrant" in the first paragraph refers to a search warrant for a "place of abode," it becomes clear that the requirement that officers provide a copy of "the search warrant" as described in the second paragraph only applies to a search warrant for a "place of abode."[1] Therefore, the Court of Appeals was correct in concluding that the provision in the second paragraph does not apply to all search warrants generally, and only applies to search warrants for a "place of abode."

---

[1] This reading is further supported by the similar relationship between the third and fourth paragraphs. The third paragraph limits the execution of a search warrant for a "place of abode" between 8:00 a.m. and 5:00 p.m., but the fourth paragraph requires that law-enforcement officers make a reasonable effort to locate a judge if they wish to execute "the warrant" at another time. Once again, the definite article "the" in the fourth paragraph is used to refer to the search warrant for a "place of abode" in the third paragraph, allowing for a more cohesive reading of the entire statute.

We recognize that we have previously cautioned against overusing tools of grammatical construction when interpreting a statute. *Harris v. Commonwealth*, 142 Va. 620, 624 (1925) ("[T]he application of rules of grammar will not be permitted to defeat the purpose of the act, if that can be otherwise ascertained."); *Indemnity Ins. Co. v. Nalls*, 160 Va. 246, 250 (1933) ("[T]his court should not permit the spirit and intendment of the statute to be whittled away by the keen edge of grammatical construction."). However, we find such use appropriate here for two reasons.

First, "proper grammatical effect will be given to the arrangement of words in a sentence of a statute" so long as it does not render a statute ambiguous. *Harris*, 142 Va. at 264. Here, the use of the definite article "the" in the second and fourth paragraphs of Code § 19.2-56(B) does not render the statute ambiguous, but instead clarifies that the entirety of the statute only applies to search warrants for a "place of abode."

Second, we have routinely used the particular placement of definite and indefinite articles as a means of statutory interpretation. *See Thorsen v. Richmond SPCA*, 292 Va. 257, 265 (2016) (finding that the use of the definite article "the" in "the instrument" as found in Code § 55-22 refers to a specific written document); *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008) (finding that the use of the indefinite article "any" in "any person" as found in Code § 46.2-817(B), interchangeable with the indefinite article "a," encompasses the entire universe of people). Interpreting Code § 19.2-56(B) in light of its usage of definite and indefinite articles continues in this tradition, and thus the Court of Appeals was correct in concluding that "the search warrant" in the second paragraph of Code § 19.2-56(B) refers to the search warrant for a "place of abode" in the first paragraph.

### III.  CONCLUSION

Ultimately, the Court of Appeals was correct in holding that the provisions of Code § 19.2-56(B), in their entirety, only apply to a "place of abode" and do not apply to commercial premises, such as the one in which Blow was found.[2]  Finding no error, we affirm the judgment of the Court of Appeals.

*Affirmed.*

---

[2] We note that this holding is consistent with the lower expectation of privacy individuals have in commercial premises, as opposed to private homes.  *See New York v. Burger*, 482 U.S. 691, 700 (1987) (holding that in the context of the Fourth Amendment, "[a]n expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home").